**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
***Disciplinary Counsel v. Taylor*, Slip Opinion No. 2024-Ohio-1082.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-1082

DISCIPLINARY COUNSEL *v*. TAYLOR.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Taylor*, Slip Opinion No. 2024-Ohio-1082.]**

*Attorneys—Misconduct—Violation of Prof.Cond.R. 8.4(c) for failing to provide truthful answers to questions on license application—Conditionally stayed six-month suspension.*

(No. 2023-0743—Submitted July 18, 2023—Decided March 27, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2022-048.

_____

**Per Curiam.**

{¶ 1} Respondent, John Taylor, of Cleveland, Ohio, Attorney Registration No. 0065693, was admitted to the practice of law in Ohio in 1995 under his birth

name, Dean Maynard Boland. Through the Cuyahoga County Probate Court, he legally changed his name to Jack Boland in 2016 and to John Taylor in 2019.[1]

{¶ 2} In a December 2022 complaint, relator, disciplinary counsel, charged Taylor with a single count of professional misconduct based on his failure to give truthful answers to questions on an application he submitted to the State Medical Board of Ohio to obtain a physician-assistant license regarding his identity, whether he had had allegations made against him or investigations concerning him, and whether he had had lawsuits filed against him. The parties jointly submitted stipulations of fact and misconduct along with 67 stipulated exhibits.

{¶ 3} Taylor testified at a hearing before a three-member panel of the Board of Professional Conduct. The panel issued a report in which it made findings of fact, misconduct, and aggravating and mitigating factors and recommended that we impose a fully stayed six-month suspension for Taylor's misconduct. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. No objections have been filed.

{¶ 4} We adopt the board's findings of misconduct and recommended sanction.

**BACKGROUND**

{¶ 5} In April 2004, respondent testified as an expert witness on behalf of a defendant who was charged with knowingly possessing or attempting to possess computer images containing sexually explicit depictions of minors. *United States v. Shreck*, N.D. Oklahoma No. 03-CR-0043-CVE, 2006 WL 7067888 (May 23, 2006). In a motion for an evidentiary hearing in that matter, the defendant asserted that his expert witness, Taylor, would testify that "it is now impossible for any individual to know from a mere viewing of digital images on a computer whether

---

1. During his disciplinary hearing, Taylor testified that the name changes were precipitated by acts of domestic violence committed against him by a former spouse. For ease of discussion, we refer to respondent as Taylor throughout this opinion, though the actions described may have been taken under one of his prior names.

2

or not those images portray actual children." During his testimony in that case, Taylor presented innocent images of several children that he had obtained from the Internet and altered to depict the children engaging in sexually explicit conduct with adults. At the conclusion of that hearing, the court directed that the exhibits "be purged from [Taylor's] hard drive" once they had been preserved for the court's record. The parties have stipulated that Taylor deleted the images from his computer and that he then mailed the computer's hard drive from Oklahoma to Ohio.

{¶ 6} In May 2004, the Cleveland office of the Federal Bureau of Investigation ("FBI") began investigating Taylor's conduct related to the sexually explicit images he had created. The FBI obtained a search warrant for Taylor's home and seized devices containing several electronic files. On April 5, 2007, Taylor executed a pretrial diversion agreement with the United States Attorney's Office, under which the office agreed to forego criminal prosecution of Taylor for "knowingly possess[ing] a computer * * * that contained images of child pornography, * * * [which] was produced using materials that had been shipped and transported in interstate and foreign commerce by any means including by computer," namely, the exhibits he created and used solely in his capacity as a witness and/or defense attorney in Oklahoma and Ohio.

{¶ 7} On September 14, 2007, two minors, whose images were used in two of the digitally manipulated images that Taylor presented as court exhibits, filed a civil action against Taylor in the United States District Court for the Northern District of Ohio, Eastern Division, seeking compensation for damages they suffered as a result of his conduct. After a discovery dispute arose, the federal district court ordered Taylor to appear at the FBI's Cleveland office to review documents and provide answers to the plaintiffs' discovery requests; Taylor complied with that order. The court initially granted summary judgment in Taylor's favor. However, the United States Court of Appeals for the Sixth Circuit reversed that judgment and

remanded the matter to the district court. On remand, the district court granted summary judgment in favor of the two minors and ordered Taylor to pay each of them the statutory-minimum damages of $150,000. The court later ordered Taylor to pay the minors $43,214.11 in attorney fees. In partial satisfaction of those judgments, the minors garnished a $70,000 payment Taylor was owed by the state of Ohio.

{¶ 8} In January 2016, Taylor filed a bankruptcy petition in the Bankruptcy Court for the Northern District of Ohio, seeking to discharge the civil judgments entered against him. Although he was initially successful in that endeavor, the Bankruptcy Appellate Panel of the Sixth Circuit reversed the bankruptcy court's judgment, determining that Taylor's actions in using the images of the two minors was "malicious" and that therefore the judgments in their favor could not be discharged in bankruptcy. *In re Boland*, 596 B.R. 532 (6th Cir. BAP 2019). As of April 11, 2023, the $70,000 garnishment was Taylor's only payment toward the judgments against him.

{¶ 9} In August 2011, relator informed Taylor that he was investigating Taylor's conduct related to his pretrial diversion agreement with the U.S. Attorney's Office, but it closed that investigation in October 2013 without filing a formal complaint against him.

## MISCONDUCT

{¶ 10} On April 8, 2019, under the name Jack Boland, Taylor electronically submitted an application to the State Medical Board of Ohio for a physician-assistant license. The medical board approved Taylor's application and issued a physician-assistant license to him, effective June 12, 2019.

{¶ 11} On his application, Taylor failed to answer or provided inaccurate responses to four questions. Taylor provided no response to the question, "Do you have other aliases?" He also answered, "No," to the following questions: (1) "Have you ever been requested to appear before any board, bureau, department, agency,

4

or other body, including those in Ohio, concerning allegations against you?"; (2) "Have you ever been notified of any investigation concerning you by any board, bureau, department, agency, or other body, including those in Ohio, with respect to a professional license, certificate, or registration?"; and (3) "Have you ever forfeited collateral, bail, or bond for breach or violation of any law, police regulation, or ordinance other than for a minor traffic violation; been summoned into court as a defendant or had any lawsuit * * * filed against you?" Above the place for the applicant's electronic signature, the application bore the following attestation:

> I hereby certify and attest that I am the person named in this application, that all statements I have or shall make with respect thereto are true.
>
> I acknowledge that I have read and understand this application and have answered all questions contained in this application truthfully and completely. I further acknowledge that failure on my part to answer questions truthfully and completely may lead to my being prosecuted under appropriate federal and state laws.
>
> * * *
>
> I understand that my failure to answer questions contained in this application truthfully and completely may lead to denial, revocation, or other disciplinary sanction of the credential for which I have applied.

{¶ 12} In August 2019 the Cuyahoga County probate court granted Jack Boland's application to change his name to John Taylor. On November 5, 2019, Taylor filed a license-renewal application with the medical board to change the

legal name on his physician-assistant license. With that application, Taylor submitted a certified copy of the August 2019 probate-court entry granting his name change from Jack Boland to John Taylor, which also referenced his 2016 name change from Dean Maynard Boland to Jack Boland.

{¶ 13} The medical board's chief investigator later interviewed Taylor about his name changes and his response on his initial application to the question asking whether he had ever been summoned into court as a defendant or had any lawsuit filed against him. In October 2021, the medical board informed Taylor of the results of its investigation—including its findings regarding his answers to three of the four questions at issue in this case—and offered him the opportunity to request a hearing before the board acted on his license-renewal application. On January 31, 2022, Taylor consented to the permanent surrender of his physician-assistant license.

{¶ 14} Taylor has stipulated that his answers to the foregoing questions on his initial application for a physician-assistant license were false in that he failed to disclose that he (1) had legally changed his name from "Dean Maynard Boland" to "Jack Boland" in 2016, (2) had been previously ordered to appear at the offices of the FBI to view evidence as part of a discovery dispute in the above-described civil action, (3) had been named as a defendant in that civil action, and (4) had been investigated by relator in 2011 for the conduct underlying his pretrial diversion agreement with the U.S. Attorney's Office.

{¶ 15} Despite those stipulations, at his April 11, 2023 attorney-disciplinary hearing, Taylor attempted to explain why some of those answers were not inaccurate or misleading. For example, Taylor testified that when he had completed the initial application for a physician-assistant license, he believed that the first question regarding aliases did not ask for his "prior names." He also asserted that it was an "optional" question and that his failure to answer it "[did not] have a truth value or a false value."

**{¶ 16}** Taylor also explained that with respect to the third question—whether he had ever been notified of any investigation with respect to a professional license—he recalled having received a letter from disciplinary counsel in the past, but because he was unsure whether the letter had used the word "investigation" and he could not find a copy of it, he answered, "No." With respect to the fourth question—whether he had been summoned into court as a defendant or had had any lawsuit filed against him—Taylor claimed that he had read the semicolon in the question as an "and." He explained that based on this reading of the question, he may have answered it in the negative because the part of the question regarding forfeiture of collateral, bail, or bond did not apply to him.

**{¶ 17}** The board found that the thrust of Taylor's defense was that he misunderstood or misinterpreted the four questions on his initial application for a physician-assistant license and that he consequently responded with what he now concedes in his stipulations are false answers. At his disciplinary hearing, rather than unequivocally acknowledging that he provided false answers on his application, he blamed the medical board for using ambiguous language and punctuation in the application. The board rejected Taylor's explanations, finding that the questions on the application were plainly stated and that Taylor's answers were false.

**{¶ 18}** Furthermore, the board noted that during his disciplinary hearing, in response to a member of the panel asking if he was still practicing law as of the date of the hearing, Taylor responded, "I am not." In response to a question about when he had last done any legal work, Taylor answered, "[A]ctually putting my name on a pleading and filing it in the court would have—could have been five years ago maybe. Four or five years ago." And when asked about whether he had held himself out as a practicing attorney, he stated that he considered the use of the term "Esquire" on his resume to be holding himself out as an attorney, but that he did not have an office or solicit clients.

{¶ 19} Two days after his disciplinary hearing, Taylor filed a motion to correct his testimony. In that motion, Taylor stated that when he had responded to the panel's questions about his practice of law, he "neglected to remember that [he] had recently offered to assist a friend who was facing a deadline to file in the Eighth District and had lost his counsel." Taylor then disclosed, "On April 3, 2023[,] I filed a notice of appearance and extension of time to file on behalf of his LLC. I am not being paid nor am I holding myself out accepting clients nor do I intend to."

{¶ 20} The board found by clear and convincing evidence that Taylor's conduct violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). We adopt that finding of misconduct.

## SANCTION

{¶ 21} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 22} The board found that two aggravating factors are present in this case: Taylor acted with a dishonest or selfish motive and refused to acknowledge the wrongful nature of his misconduct. *See* Gov.Bar R. V(13)(B)(2) and (7). As for mitigating factors, the board found that Taylor had a clean disciplinary record and had other penalties or sanctions imposed for his misconduct in that he had permanently surrendered his physician-assistant license. *See* Gov.Bar R. V(13)(C)(1) and (6).

{¶ 23} In his closing argument before the panel, relator noted that there is a presumption that an actual suspension from the practice of law is required when an attorney has been found to have violated Prof.Cond.R. 8.4(c). We have held that "[w]hen an attorney engages in a course of conduct that [violates an ethical rule prohibiting dishonesty, fraud, deceit, or misrepresentation], the attorney will be

actually suspended from the practice of law for an appropriate period of time." *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237 (1995), syllabus. In *Fowerbaugh*, we imposed a six-month suspension on an attorney who lied to a client about the status of her case, created a false document to convince the client that he had filed her case after the court rejected his filing, and perpetuated his dishonesty by telling the client that a hearing had been scheduled and later that it had been canceled. *Id.* at 187-188, 191. But we have since recognized that the presumption of an actual suspension established in *Fowerbaugh* may be overcome by "an abundance of mitigating evidence." *See, e.g.*, *Disciplinary Counsel v. Markijohn*, 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 24, ¶ 8, citing *Dayton Bar Assn. v. Kinney*, 89 Ohio St.3d 77, 728 N.E.2d 1052 (2000).

{¶ 24} In this case, relator conceded at Taylor's disciplinary hearing that an actual suspension is not required and argued that the appropriate sanction for Taylor's misconduct is a fully stayed six-month suspension.

{¶ 25} In determining the appropriate sanction to recommend for Taylor's misconduct, the board considered six cases in which we imposed a range of sanctions on attorneys who engaged in dishonest conduct. In two of those cases, we publicly reprimanded attorneys who engaged in isolated incidents of falsifying documents when significant mitigating factors but no aggravating factors were present. In *Cincinnati Bar Assn. v. Thompson*, 129 Ohio St.3d 127, 2011-Ohio-3095, 950 N.E.2d 550, the attorney was found to have violated Prof.Cond.R. 8.4(c) after he notarized two unsigned documents, but he had had a clean disciplinary record, self-reported his misconduct, cooperated in the disciplinary proceedings, and submitted evidence of his good character and reputation.

{¶ 26} Similarly, in *Warren Cty. Bar Assn. v. Clifton*, 147 Ohio St.3d 399, 2016-Ohio-5587, 66 N.E.3d 713, the attorney altered a client's will after the client died but before filing the will in probate court by adding an inadvertently omitted descendant though his alteration did not change the outcome of the probate

proceedings. Mitigating factors included the attorney's cooperation in the disciplinary proceeding and his expressed remorse. The board in this case also noted that we have accepted a consent-to-discipline agreement and publicly reprimanded an attorney in another disciplinary action involving circumstances similar to those in *Thompson* and *Clifton*. *See Cleveland Metro. Bar Assn. v. Grendel*, 163 Ohio St.3d 1442, 2021-Ohio-1896, 168 N.E.3d 1212. The board, however, expressed its belief that because Taylor has not fully and unequivocally acknowledged the wrongful nature of his misconduct, his misconduct warrants a sanction greater than a public reprimand.

{¶ 27} The board also considered two other cases imposing actual time off from the practice of law for attorneys who, like Taylor, made false statements on government applications.

{¶ 28} In *Mahoning Cty. Bar Assn. v. DiMartino*, 124 Ohio St.3d 360, 2010-Ohio-247, 922 N.E.2d 220, an attorney engaged in dishonest conduct by falsely representing on an out-of-state marriage application that he had never been married, although his Ohio divorce case was pending at that time. Because he had twice been disciplined for neglecting client matters and was serving a one-year stayed suspension for his second offense when he engaged in this dishonest conduct, we reinstated his one-year suspension from the previous disciplinary case and sanctioned him with a concurrent six-month suspension for his dishonesty. *DiMartino* at ¶ 1, 16.

{¶ 29} And in *Disciplinary Counsel v. Fuhry*, 151 Ohio St.3d 549, 2017-Ohio-8813, 90 N.E.3d 933, ¶ 5, 12-13, we found that an attorney violated five ethical rules by continuing to practice law while her license was suspended for registration and continuing-legal-education violations and for falsely attesting on a government form for securities-industry registration that her law license had never been revoked or suspended. Fuhry also lied to her employer about her suspension and later to relator in the initial stages of the disciplinary investigation. *Id*. at ¶ 12.

Aggravating factors consisted of Fuhry's prior discipline, selfish or dishonest motive, multiple offenses, and submission of false statements during the disciplinary investigation. *Id.* at ¶ 8. As for mitigating factors, Fuhry eventually cooperated fully in the disciplinary proceedings and had other sanctions imposed for her misconduct—namely, the termination of her employment. *Id.* We imposed a two-year suspension with six months conditionally stayed for Fuhry's misconduct. *Id.* at ¶ 14.

**{¶ 30}** Finally, the board considered *Disciplinary Counsel v. Jarvis*, 169 Ohio St.3d 430, 2022-Ohio-3936, 205 N.E.3d 499. There, the attorney engaged in multiple acts of dishonesty while representing a married couple in an estate-planning matter. The attorney falsely notarized multiple legal documents and backdated some of them. *Jarvis* at ¶ 12, 14, 17. He signed other legal documents as a witness even though he was not present when the documents were signed by his clients. The attorney also attested that one of his clients appeared to be of sound mind when the client signed two legal documents even though the attorney was aware that that client had been diagnosed with Alzheimer's disease and he had never personally communicated with that client. *Id.* at ¶ 7, 12, 14. We found that the attorney violated six ethical rules, including Prof.Cond.R. 8.4(c). *Id.* at ¶ 27. Aggravating factors included the attorney's engaging in a pattern of misconduct, committing multiple offenses, and harming vulnerable victims. But as mitigating factors, he had no prior discipline, made full and free disclosure to the board, exhibited a cooperative attitude toward the disciplinary proceedings, and had a related professional-malpractice action pending against him at the time of his disciplinary hearing. Although the attorney engaged in a pattern of dishonesty over a period of approximately ten months, we found that the mitigating factors in his case were sufficient to rebut the presumption of an actual suspension from the practice of law, and we imposed an 18-month conditionally stayed suspension for his misconduct. *Id.* at ¶ 40.

**{¶ 31}** The board concluded that the mitigating evidence in this case—including Taylor's clean disciplinary record and the penalty imposed by the loss of his physician-assistant license—was sufficient to depart from the presumption of an actual suspension from the practice of law for a violation of Prof.Cond.R. 8.4(c). Further, the board noted that Taylor's misconduct caused no harm to any clients or the public.

**{¶ 32}** The evidence shows that Taylor made false statements on an application to obtain a physician-assistant license in Ohio. His false answers concealed relevant and highly prejudicial information regarding his background that had the potential to negatively affect the outcome of his application. He did not, however, engage in a course of conduct involving dishonesty, fraud, deceit, or misrepresentation like the attorneys in *Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237, *Fuhry*, 151 Ohio St.3d 549, 2017-Ohio-8813, 90 N.E.3d 933, and *Jarvis*. Nor did Taylor have a history of prior discipline comparable to the attorney in *DiMartino*, 124 Ohio St.3d 360, 2010-Ohio-247, 922 N.E.2d 220, that would warrant a greater sanction. Rather, Taylor's misrepresentations occurred on a single occasion. And when the medical board questioned him about his application, he provided detailed information about his past. On these facts, we accept the board's recommendation that the appropriate sanction for Taylor's misconduct is a fully stayed six-month suspension.

## CONCLUSION

**{¶ 33}** Accordingly, John Taylor is suspended from the practice of law in Ohio for six months with the suspension stayed in its entirety on the condition that he engage in no further misconduct. If Taylor fails to comply with the condition of the stay, the stay will be revoked and he will serve the full six-month suspension. Costs are taxed to Taylor.

Judgment accordingly.

DEWINE, DONNELLY, STEWART, and DETERS, JJ., concur.

KENNEDY, C.J., concurs in part and dissents in part, with an opinion.

FISCHER, J., concurs in part and dissents in part, with an opinion.

BRUNNER, J., not participating.

_____

**KENNEDY, C.J., concurring in part and dissenting in part.**

{¶ 34} "The primary purpose of attorney discipline 'is not to punish the offender, but to protect the public.' " *Disciplinary Counsel v. Nowicki*, __ Ohio St.3d __, 2023-Ohio-3079, __ N.E.3d __, ¶ 82 (Kennedy, C.J., concurring in part and dissenting in part), quoting *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53. " 'Protecting the public * * * is not strictly limited to protecting clients from a specific attorney's potential misconduct. Imposing attorney-discipline sanctions also protects the public by demonstrating to the bar and the public that this type of conduct will not be tolerated.' " (Ellipses added in *Nowicki*.) *Id.* at ¶ 83 (Kennedy, C.J., concurring in part and dissenting in part), quoting *Disciplinary Counsel v. Schuman*, 152 Ohio St.3d 47, 2017-Ohio-8800, 92 N.E.3d 850, ¶ 17. Consequently, if we fail to appropriately sanction attorneys for their deceitful conduct, then "[w]e cannot expect citizens to trust that lawyers are honest," *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 190, 658 N.E.2d 237 (1995).

{¶ 35} Prof.Cond.R. 8.4(c) prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. When an attorney violates Prof.Cond.R. 8.4(c), a presumption exists that "the attorney will be actually suspended from the practice of law for an appropriate period of time." *Fowerbaugh* at 190. This presumption may be overcome only when there is "an abundance of mitigating evidence." *Disciplinary Counsel v. Markijohn*, 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 1052, ¶ 8. In this case, there is not an abundance of mitigating factors. While I agree with the majority that Taylor violated Prof.Cond.R. 8.4(c), as found by the board, I disagree with the majority's

determination that an abundance of mitigating evidence is present in this case and weighs in favor of this court's departing from the presumption that an actual suspension should be imposed. I would reject the board's recommended sanction, and I would suspend Taylor from the practice of law in Ohio for one year with six months stayed. Because the majority does otherwise, I dissent.

### Lack of Abundance of Mitigating Factors

{¶ 36} " 'Each disciplinary case involves unique facts and circumstances.' " *Nowicki* at ¶ 35 (Kennedy, C.J., concurring in part and dissenting in part), quoting Gov.Bar R. V(13)(A). Therefore, to make a sanction recommendation, "the board shall consider aggravating and mitigating factors." *Id.* at ¶ 58 (Kennedy, C.J., concurring in part and dissenting in part). "Aggravating factors weigh in favor of 'recommending a more severe sanction.' " *Id.*, quoting Gov.Bar. R. V(13)(B). "Mitigating factors weigh in favor of 'recommending a less severe sanction.' " *Id.*, quoting Gov.Bar R. V(13)(C). As previously stated, an abundance of mitigating factors must be present for this court to impose a stayed-suspension sanction when an attorney violates Prof.Cond.R. 8.4(c).

{¶ 37} "Abundance" means a "great quantity or amount," "large number," or "plentiful supply." *Webster's Third New International Dictionary* 8 (2002). In this case, two mitigating factors and two aggravating factors are present. The mitigating factors are: (1) Taylor has no prior discipline and (2) he has already been subjected to the imposition of penalties and sanctions by the revocation of his physician-assistant license. *See* Gov.Bar R. V(13)(C)(1) and (6). The aggravating factors are: (1) Taylor acted with a dishonest or selfish motive and (2) he refused to acknowledge the wrongful nature of his conduct. *See* Gov.Bar R. V(13)(B)(2) and (7). In my view, two mitigating factors do not constitute a great quantity, large number, or plentiful supply when an equal number of aggravating factors is also present; therefore, an abundance of mitigating factors is not present in this case.

{¶ 38} In the cases relied on by the majority to show instances in which we have overcome the presumption of an actual suspension, the number of mitigating factors outweighed the number of aggravating factors. For example, in *Cincinnati Bar Assn. v. Thompson*, 129 Ohio St.3d 127, 2011-Ohio-3095, 950 N.E.2d 550, the board found four mitigating factors—the attorney had no prior discipline, self-reported his misconduct, cooperated in the disciplinary proceedings, and presented evidence of his good character—and no aggravating factors. Similarly, in *Warren Cty. Bar Assn. v. Clifton*, 147 Ohio St.3d 399, 2016-Ohio-5587, 66 N.E.3d 713, the board found four mitigating factors—the attorney had no prior discipline, made a good-faith effort to rectify the consequences of his misconduct, made a full disclosure of his misconduct to the board during disciplinary proceedings, and presented evidence of his good character—and no aggravating factors. In *Disciplinary Counsel v. Jarvis*, 169 Ohio St.3d 430, 2022-Ohio-3936, 205 N.E.3d 499, we imposed a stayed-suspension sanction where more mitigating factors than aggravating factors were present—the board found that four mitigating factors were present in comparison to three aggravating factors. Unlike in those cases, here an equal number of mitigating and aggravating factors is present, so there cannot be an *abundance* of mitigating factors.

**Weight of Mitigating Versus Aggravating Factors**

{¶ 39} In addition to the number of mitigating factors present, we must also consider their weight. The "importance or weight of a mitigating or aggravating factor depends on the facts of the case." *Nowicki*, __ Ohio St.3d __, 2023-Ohio-3079, __ N.E.3d __, at ¶ 59 (Kennedy, C.J., concurring in part and dissenting in part). Considering the facts in this case, the mitigating factors should be afforded less weight and the aggravating factors should be afforded more weight than the majority assigns them.

{¶ 40} Despite stipulating that the answers he provided in response to questions on his physician-assistant-license application were false, Taylor refused

to acknowledge the wrongfulness of his conduct at his disciplinary hearing. As the majority aptly states, "rather than unequivocally acknowledging that he provided false answers on his application, [Taylor] blamed the medical board for using ambiguous language and punctuation in the application." Majority opinion, ¶ 17. In addition, the board determined that Taylor repeatedly referred to his false answers as merely responses to "four questions," which was no cause to suffer sanctions. Contrary to this assertion, the four questions to which Taylor provided false answers present us with cause to impose sanctions because several of the answers that Taylor provided operated to conceal his past misconduct and deceitful acts. On his application for a physician-assistant license, Taylor failed to disclose that he had been requested to appear before the Federal Bureau of Investigation for a discovery dispute in a civil action, that he was named as a defendant in a civil action, and that he had been previously investigated by the board. *See* majority opinion at ¶ 14. Therefore, in my view, the facts of this case support assigning greater weight to the aggravating factors and less weight to the mitigating factors.

**Conclusion**

{¶ 41} In Taylor's case, a fully stayed suspension "does not send a 'strong message' to attorneys across Ohio." *Nowicki* at ¶ 84 (Kennedy, C.J., concurring in part and dissenting in part), quoting *Nowicki* at ¶ 31 (majority opinion). Given the scarcity of mitigating factors in this case and considering Taylor's failure to unequivocally acknowledge the deceitfulness of his conduct, a fully stayed suspension is insufficient to protect the public and preserve public confidence in Ohio's attorneys. To do this, we should impose an actual suspension in this case. Therefore, I dissent from the majority opinion because I would suspend Taylor from the practice of law in Ohio for one year with six months stayed.

_____

**FISCHER, J., concurring in part and dissenting in part.**

{¶ 42} The majority opinion and the first opinion concurring in part and dissenting in part both epitomize an obvious problem with Ohio's system of lawyer discipline and, more specifically, the type of sanctions available to this court.

{¶ 43} This court may discipline a lawyer by imposing one of the following sanctions: a public reprimand, a six-months-to-two-year suspension (which may be stayed in whole or in part), an indefinite suspension (with credit or no credit for time served), or a permanent disbarment. Gov.Bar R. V(12)(A)(1) through (3) and (5). We may also impose a probation period but "only in conjunction with a [six-months-to-two-year suspension]." Gov.Bar R. V(12)(A)(4). The sanctions available under Gov.Bar R. V(12)(A) limit this court's ability to fully protect the public from the various types of misconduct that may be committed by a lawyer or judge.

{¶ 44} Other states have additional sanctions to impose on lawyers for misconduct. For example, private reprimands are available in some states, including our neighboring states of Indiana, *see* Indiana Admission and Discipline Rule 23(I)(3)(a)(5), and Pennsylvania, *see* Pennsylvania Disciplinary Board Rule 85.8(a)(6). Many states also permit the imposition of suspensions of less than six months, including our neighboring states of Indiana, *see* Indiana Admission and Discipline Rule 23(I)(3)(a)(3) (providing for suspensions of less than 180 days), Michigan, *see* MCR Rule 9.106(2) (providing for suspensions of 30 days or more), and Pennsylvania, *see* Pennsylvania Disciplinary Board Rule 85.8(a)(2) (providing for suspensions not exceeding five years). This court should have more options available, as do our neighboring states and many others, by which to discipline and impose sanctions on lawyers who have committed misconduct.

{¶ 45} This case presents an excellent example of the issues caused by our limited available sanctions. Here, the majority properly castigates respondent, John Taylor, for engaging in lawyer misconduct. *See* majority opinion, ¶ 32. However,

the sanction imposed by the majority is a fully stayed six-month suspension. *Id*. Although a lawyer on whom a fully stayed suspension has been imposed faces the threat of the stay being revoked if the lawyer fails to comply with the conditions of the stay, in my experience that rarely occurs and the lawyer never serves an actual suspension. In reality then, how is a fully stayed six-month suspension different from a public reprimand? The only possible difference is that under our rules, a probation period may be added to a suspension but not to a public reprimand. A probation period has not been imposed in this case. So in effect, the fully stayed six-month suspension imposed on Taylor is really no different than a public reprimand.

**{¶ 46}** The first concurring-and-dissenting opinion correctly points out that given the deceitful nature of Taylor's conduct, an actual suspension is needed here to protect the public. *See* opinion concurring in part and dissenting in part of Kennedy, C.J., ¶ 39-41. Meanwhile, a majority of this court does not believe that Taylor needs any "time off." However, if this court were to permit the imposition of a six-month suspension, with three months stayed, and impose that sanction here, then Taylor would be required to "close down" for an appropriate period that would protect the public but not create an unwarranted long-term negative impact on his future legal career.

**{¶ 47}** Admittedly, closing an office for three months would entail notifying clients of the closing and the lawyer's inability to represent those clients during that period. *See* Gov.Bar R. V(22)(A)(1) (suspended lawyers shall notify all clients of a suspension and consequent disqualification to act as a lawyer). This is a good thing—and I agree with this rule—because a lawyer who is publicly reprimanded or receives a fully stayed suspension is not required to notify his or her clients of the sanction imposed since the sanction would not affect the lawyer's representation of clients.

**{¶ 48}** Similarly, there are numerous investigations by disciplinary counsel, the Ohio State Bar Association, and local grievance committees into lawyer misconduct that ultimately result in no further action being taken. A private reprimand would act as a wake-up call for some lawyers and may prevent a continuation of any potential unlawful or unethical behavior without harming the lawyer's practice. And as I propose we do here, by allowing the imposition of a six-month suspension, with three months stayed, lawyers may be proportionately disciplined for their misconduct without the sanction's being exceedingly harsh.

**{¶ 49}** There is no reason for us to tie our hands behind our backs and unnecessarily limit our ability to impose appropriate sanctions in attorney-discipline cases. Each of the different sanctions I have discussed in this opinion— namely, the imposition of a private reprimand and a three-month actual suspension—should be examined and considered by this court after input from the bench, bar, and public. Taylor's attorney-discipline case is ideal for illustrating how an alternative suspension—for example, a six-month suspension with three months stayed—would be proper for the type of lawyer misconduct presented here.

**{¶ 50}** For these reasons, I respectfully dissent in part. I would suspend Taylor from the practice of law in Ohio for six months with three months stayed.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Matthew A. Kanai, Assistant Disciplinary Counsel, for relator.

John Taylor, pro se.

_____