NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-603

DISCIPLINARY COUNSEL *v.* PIAZZA.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Piazza,* Slip Opinion No. 2020-Ohio-603.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Two-year suspension with second year stayed on conditions.*

(No. 2019-1369—Submitted November 13, 2019—Decided February 25, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-010.

_____

**Per Curiam.**

{¶ 1} Respondent, Anthony Michael Piazza, of Olmsted Falls, Ohio, Attorney Registration No. 0017731, was admitted to the practice of law in Ohio in 1977. In February 2019, relator, disciplinary counsel, charged him with violating the Rules of Professional Conduct based on his misdemeanor convictions in two municipal courts and for misusing his client trust account. Piazza stipulated to the

charges against him, and the matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. The board issued a report finding that Piazza engaged in the stipulated misconduct and recommending that we suspend him for two years with the second year stayed on conditions. Neither party has filed objections to the board's report.

{¶ 2} Based on our review of the record, we accept the board's findings of misconduct and recommended sanction.

**Misconduct**

*Piazza's misdemeanor convictions*

{¶ 3} In July 2017, Piazza was arrested and charged in the Berea Municipal Court with assault and disorderly conduct. The court released him on bond the same day and issued a temporary criminal-protection order prohibiting him from having any contact with the female victim. Later that month, however, Piazza went to the victim's home in Fairview Park, Ohio. When the Fairview Park police questioned him about going to the victim's home, he initially denied it. But after the police advised him that a witness had spotted him at the victim's home, he admitted having gone there. Piazza was thereafter charged in the Rocky River Municipal Court—which hears cases out of Fairview Park—with violating the protection order.

{¶ 4} In February 2018, the Rocky River court dismissed the case without prejudice after the victim failed to appear for the scheduled trial. The victim, however, later advised the prosecutor that Piazza had told her not to appear because the court was closed that day. As a result, the charges against Piazza were refiled, and he later pleaded no contest to violating the protection order. The court ordered him to pay a $100 fine and court costs.

{¶ 5} In the interim, Piazza also had improper contact with the victim while they were both at the Berea Municipal Court, which resulted in his arrest and new charges in that court for violating the protection order. The Berea court eventually

2

dismissed the original assault and disorderly-conduct charges, and Piazza pleaded no contest to the protection-order violation. Although the court advised Piazza that the protection order would remain in place until his sentencing, he continued to contact the victim, which resulted in the revocation of his bond.

{¶ 6} In July 2018, the Berea court sentenced Piazza to ten days in jail, with credit for the three days he had already served, and permitted him to serve the remaining jail time under house arrest. The court also ordered Piazza to complete a domestic-violence program, pay a $100 fine and court costs, serve two years of probation, and comply with all programs and treatment recommendations from his probation officer, including random drug and alcohol testing.

{¶ 7} In October 2018, Piazza tested positive for cocaine, and in November 2018, he twice tested positive for benzoylecgonine, a metabolite of cocaine. Although he initially contested the accuracy of the November test results, he later admitted to violating his probation and was sentenced to two days in jail. Piazza also admitted that he had used cocaine approximately 20 times in 2018.

{¶ 8} Piazza thereafter completed a chemical-dependency outpatient program and commenced a continuing-care treatment program. However, in March 2019, he tested positive for benzoylecgonine. The Berea court found that he had again violated his probation, sentenced him to seven days in jail with a house-arrest option, and continued his probation until July 2020. Piazza began a new intensive outpatient program in May 2019.

{¶ 9} The parties stipulated and the board found that Piazza had engaged in the following misconduct. By repeatedly violating the temporary protection order and the conditions of his probation, he violated Prof.Cond.R. 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal). By initially informing the Fairview Park police that he had not gone to the victim's home and by advising the victim not to appear for trial, he violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud,

deceit, or misrepresentation). And by repeatedly using an illegal substance, he violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21 (holding that even when a lawyer's conduct is not specifically prohibited by the Rules of Professional Conduct, he may be found to have violated Prof.Cond.R. 8.4(h) if there is clear and convincing evidence that he engaged in misconduct that adversely reflects on his fitness to practice law).

{¶ 10} We agree with the board's findings of misconduct.

*Client-trust-account violations*

{¶ 11} In April 2018, relator commenced an investigation of Piazza's client trust account after being notified that he had overdrawn the account. Relator had previously investigated Piazza's trust account in 2010, 2012, 2014, and 2016, but terminated those investigations based on Piazza's repeated assurances that he would correct his mistakes. For example, in 2016, Piazza admitted that he had not been maintaining individual client ledgers or a general ledger and that he had not been reconciling funds in the account on a monthly basis as required by Prof.Cond.R. 1.15(a). He further admitted that on at least one occasion, he had used his client trust account for a personal reason. After Piazza signed an affidavit attesting that he understood the requirements of Prof.Cond.R. 1.15 and would comply with its provisions, relator terminated the disciplinary investigation.

{¶ 12} Despite those prior assurances, relator's 2018 investigation uncovered that Piazza had continued to violate Prof.Cond.R. 1.15. Specifically, he deposited personal funds into the account on at least 11 occasions, withdrew money and issued checks from the account for personal reasons, failed to deposit one client's unearned fees into the account, failed to maintain individual client ledgers and a general ledger, and failed to perform a monthly reconciliation of funds in the account.

{¶ 13} In addition, on two occasions, Piazza misappropriated client funds from the account. In December 2016, he deposited into his trust account a client's $1,000 check for a potential real-estate transaction. Although those funds should have been held in trust for his client, Piazza withdrew $225 of the client's money. When the real-estate deal fell through, Piazza had to use his own and other clients' money to fully refund his client's $1,000. Similarly, in December 2017, he deposited into his trust account a client's $1,000 check that was an advance on legal fees and expenses for an estate matter. Although that money should have remained in his client trust account until he either paid estate expenses or the probate court approved his attorney fees, Piazza withdrew the entire amount from his trust account one day after depositing it.

{¶ 14} Based on the foregoing, the parties stipulated and the board found that Piazza had engaged in the following misconduct. By failing to deposit client funds into his client trust account, he violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold client property in an interest-bearing trust account, separate from the lawyer's own property). By failing to maintain individual client ledgers, he violated Prof.Cond.R. 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held). By failing to maintain a general ledger of his client trust account, he violated Prof.Cond.R. 1.15(a)(3) (requiring a lawyer to maintain a record for the lawyer's client trust account setting forth the name of the account, the date, the amount, and the client affected by each credit and debit, and the balance in the account). By failing to perform a monthly reconciliation of the funds in the account, he violated Prof.Cond.R. 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account). By depositing personal funds into the account, he violated Prof.Cond.R. 1.15(b) (permitting a lawyer to deposit his or her own funds into a client trust account only for the purpose of paying or obtaining a waiver of bank

service charges). And by misappropriating two clients' funds, he violated Prof.Cond.R. 8.4(c).

{¶ 15} We agree with the board's findings of misconduct.

**Sanction**

{¶ 16} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 17} In mitigation, the board found that Piazza had no prior discipline in his 42-year legal career, he cooperated in the disciplinary process and acknowledged certain wrongdoing, other penalties have been imposed for some of his misconduct, and he submitted evidence of his competence as an attorney and good reputation in the community. *See* Gov.Bar R. V(13)(C)(1), (4) through (6).

{¶ 18} As aggravating factors, the board found that Piazza engaged in a pattern of misconduct and committed multiple offenses. *See* Gov.Bar R. V(13)(B)(3) and (4). The board stressed that he had engaged in *multiple* patterns of misconduct by repeatedly violating the protection order and his probation conditions, by misleading the police and the victim to gain an advantage or avoid prosecution, by repeatedly using illegal substances during the relevant period of this disciplinary matter, and by disregarding the requirements of Prof.Cond.R. 1.15 despite there having been four prior investigations for his noncompliance with that rule. The board also noted that although Piazza offered a "veneer of good-faith cooperation and contrition" at his disciplinary hearing, he was "not sincere regarding his continuous and egregious flaunting of the Rules of Professional Conduct."

{¶ 19} In reviewing applicable case law, the board noted that we often publicly reprimand or impose fully stayed suspensions on attorneys who mismanaged their client trust accounts but otherwise caused no harm to their

clients. *See, e.g.*, *Disciplinary Counsel v. Dockry*, 133 Ohio St.3d 527, 2012-Ohio-5014, 979 N.E.2d 313. This case is distinguishable, the board found, because it involves a "knowing and willful failure to abide by the Rules of Professional Conduct over a number of years." Indeed, after relator's prior investigations of Piazza's client trust account, he assured relator that he would comply with Prof.Cond.R. 1.15 and even signed an affidavit to that effect. But as the board found, he merely "feigned understanding and a willingness toward compliance" and ultimately refused to comply with that rule.

{¶ 20} The board therefore noted that the facts here are more similar to those in *Disciplinary Counsel v. Alexander*, 133 Ohio St.3d 232, 2012-Ohio-4575, 977 N.E.2d 633, in which we suspended an attorney for one year, with six months conditionally stayed, for showing a "general disregard of the rules of professional conduct" by his prolonged misuse of his client trust account, failure to keep account records, and other misconduct. *Id.* at ¶ 14-15. But Piazza knowingly misused his client trust account for a much longer period than the attorney in *Alexander*. And as the board recognized, Piazza has twice been convicted of violating a protection order and engaged in other misconduct relating to those convictions, which itself warrants at least a one-year stayed suspension. *See, e.g.*, *Disciplinary Counsel v. Camboni*, 145 Ohio St.3d 395, 2016-Ohio-653, 49 N.E.3d 1284 (imposing a stayed one-year suspension on an attorney who had been convicted of misdemeanor assault and operating a vehicle while intoxicated and who had violated a court order forbidding him from having contact with the victim).

{¶ 21} The board ultimately found our decision in *Disciplinary Counsel v. Joltin*, 147 Ohio St.3d 490, 2016-Ohio-8168, 67 N.E.3d 780, to be most instructive. Joltin committed client-trust-account violations similar to those committed by Piazza, including repeatedly commingling personal and client funds over several years, spending client funds before they were earned, paying personal expenses directly from his trust account, misappropriating client funds held in the account,

and failing to maintain trust-account records or perform monthly reconciliations. Also similar to Piazza, Joltin engaged in misconduct beyond misusing his trust account, including lying to a client, neglecting another client's case, and failing to cooperate in several disciplinary investigations. Joltin lacked a prior disciplinary record, and we concluded that a two-year suspension, with the second year stayed on conditions, was "commensurate with the severity of Joltin's misconduct and [would] adequately protect the public from future harm." *Id.* at ¶ 33.

{¶ 22} The board recommends the same sanction here. And because Piazza remains in the process of recovering from a cocaine addiction, the board also recommends conditioning the stayed portion of his sanction on his participation with the Ohio Lawyers Assistance Program ("OLAP") and prohibiting his reinstatement until he submits proof that he is capable of returning to the competent, ethical, and professional practice of law.

{¶ 23} "[W]e have consistently recognized that the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public." *Disciplinary Counsel v. Edwards*, 134 Ohio St.3d 271, 2012-Ohio-5643, 981 N.E.2d 857, ¶ 19. "Imposing attorney-discipline sanctions also protects the public by demonstrating to the bar and the public that this type of conduct will not be tolerated." *Disciplinary Counsel v. Schuman*, 152 Ohio St.3d 47, 2017-Ohio-8800, 92 N.E.3d 850, ¶ 17. With those purposes in mind, we accept the board's recommended sanction. Piazza needs time away from the practice of law to appreciate the importance of the Rules of Professional Conduct and to ensure that he will incorporate the appropriate procedures into his practice. Further, the board-recommended conditions should help to ensure that he returns to the practice of law only after treatment for his addiction.

## Conclusion

{¶ 24} For the reasons explained above, Anthony Michael Piazza is suspended from the practice of law in Ohio for two years with the second year

stayed on the conditions that he (1) obtain an OLAP assessment within 60 days of our disciplinary order and (2) engage in no further misconduct. If Piazza violates either condition of the stay, the stay will be lifted and he will serve the entire two-year suspension. In addition to the requirements of Gov.Bar R. V(24), Piazza's reinstatement to the practice of law shall be conditioned upon (1) submission of proof that he has complied with any OLAP contract and all treatment and counseling recommendations resulting from his OLAP assessment and (2) submission of an opinion from a qualified health-care professional that Piazza is capable of returning to the competent, ethical, and professional practice of law. Costs are taxed to Piazza.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

FISCHER, J., would impose probation under Gov.Bar R. V(21)(A) for the stayed year of the suspension.

_____

Joseph Caligiuri, Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

Anthony M. Piazza, pro se.

_____