**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. VanBibber*, **Slip Opinion No. 2024-Ohio-1702.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-1702

DISCIPLINARY COUNSEL *v*. VANBIBBER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. VanBibber*, Slip Opinion No. 2024-Ohio-1702.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct stemming from multiple traffic violations, failure to comply with court orders, mismanagement of client trust account, and failure to cooperate in disciplinary investigation—Conditionally stayed two-year suspension.*

(No. 2023-0979—Submitted September 12, 2023—Decided May 7, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2022-050.

_____

**Per Curiam.**

{¶ 1} Respondent, Jack Herchel VanBibber, of Marion, Ohio, Attorney Registration No. 0097242, was admitted to the practice of law in Ohio in 2018.

**{¶ 2}** In a two-count December 2022 complaint, relator, disciplinary counsel, charged VanBibber with a total of five ethical violations, arising primarily from his being charged with and convicted of traffic offenses in multiple Ohio counties, his dishonesty with law-enforcement officers during traffic stops, his failure to comply with court orders related to his traffic violations, his mismanagement of his client trust account, and his failure to cooperate in the ensuing disciplinary investigation. The parties submitted stipulations of fact, misconduct (including three ethical violations that were not charged in relator's complaint), and aggravating and mitigating factors. They also submitted 70 stipulated exhibits.

**{¶ 3}** The matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. The panel found by clear and convincing evidence that VanBibber had committed the charged misconduct and the additional stipulated violations. After considering the relevant aggravating and mitigating factors and our relevant precedent, the panel recommended that VanBibber be suspended from the practice of law in Ohio for two years with the entire suspension conditionally stayed. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. The parties jointly waived objections to the board's findings and recommendations. *See* Gov.Bar R. V(17)(B)(3).

**{¶ 4}** For the reasons that follow, we adopt the board's findings of misconduct and recommended sanction.

## I. MISCONDUCT

### A. Count One—VanBibber's Dishonesty and Failure to Comply with the Law

**{¶ 5}** Relator alleged in the first count of the complaint that over a period of nearly four and a half years, VanBibber violated Prof.Cond.R. 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud,

deceit, or misrepresentation), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). Those allegations relate primarily to VanBibber's conduct that gave rise to five traffic stops, his dishonesty during those stops, his being charged with and convicted of traffic offenses resulting from those stops, and his failure to abide by the resulting court orders. The parties' stipulated facts and exhibits and VanBibber's disciplinary-hearing testimony support the findings of the board.

*1. Traffic Violations in Greene County*

**{¶ 6}** Late in the evening on December 25, 2017—ten days before VanBibber was admitted to the practice of law in Ohio—he drove his truck off a road in Greene County and crashed into a tree. He admitted to the responding law-enforcement officers that he had consumed alcohol prior to driving, but he refused to submit to a chemical test to determine the alcohol concentration or presence of other controlled substances in his body. As a result of his refusal to submit to a chemical test, his driver's license was seized and administratively suspended under R.C. 4511.191.

**{¶ 7}** VanBibber was charged in the Xenia Municipal Court with operating a vehicle while under the influence of alcohol or a drug of abuse ("OVI") and failure to control. He pleaded guilty to an amended charge of reckless operation, was sentenced to a suspended jail term, and was ordered to serve three days in a driver-intervention program, which he completed in July 2018. He was also ordered to pay a fine and court costs and serve a two-year term of community control. Because VanBibber was unable to show at the sentencing hearing that he had motor-vehicle liability insurance at the time of his traffic offense, his driver's license was suspended pending his submission of proof to the Ohio Bureau of Motor Vehicles ("BMV") of his compliance with Ohio's Financial Responsibility Act, R.C. Chapter 4509 (a "financial-responsibility suspension").

**{¶ 8}** VanBibber filed an application for driving privileges in the Xenia Municipal Court, but the court never ruled on the application because VanBibber did not pay the required $50 permit fee. VanBibber also did not notify the BMV that he had obtained motor-vehicle liability insurance for a six-month period from mid-September 2018 through mid-March 2019. Therefore, the financial-responsibility suspension remained in effect. Nevertheless, he continued to drive.

*2. Traffic Violations in Delaware County*

**{¶ 9}** In December 2018, a state trooper stopped VanBibber in Delaware County after observing him drive "across 6 lanes to the right turn lane toward a vehicle then swerv[e] back four lanes to the left turn lane." During the traffic stop, the trooper found marijuana in the trunk of VanBibber's car. As a result of that incident, VanBibber was charged in the Delaware Municipal Court with possession of marijuana, driving in marked lanes, driving under suspension in violation of R.C. 4510.11A, and driving under OVI suspension in violation of R.C. 4511.14. He moved to amend the charge of driving under OVI suspension to a charge of driving under financial-responsibility suspension in violation of R.C. 4510.16. The court granted the motion, and VanBibber pleaded guilty to the amended charge. The remaining charges were dismissed. VanBibber was fined $100 and ordered to pay court costs and serve one year of community control. Because he was unable to show proof of insurance at the time of sentencing, the financial-responsibility suspension continued.

**{¶ 10}** VanBibber signed a form acknowledging the municipal court's order requiring him to pay the fine and court costs by 10:00 a.m. on July 9, 2019, or appear in court at that time to show cause why he had failed to do so. He failed to comply with the court's order. The court therefore blocked his vehicle registration and transfer privileges. That block remained in effect until September 2020 when VanBibber paid the fine and court costs.

4

### 3. *Traffic Violations in Logan County*

{¶ 11} On January 3, 2020, a Bellefontaine police officer clocked VanBibber driving 39 m.p.h. in a 25 m.p.h. zone. After activating his emergency lights and initiating a pursuit, the officer observed VanBibber fail to yield at a stop sign and reach speeds in excess of 60 m.p.h. while driving through residential areas, alleys, and side streets before finally stopping. When questioned by the officer, VanBibber claimed that he had been unaware of the pursuit and that he had been driving to the Bellefontaine Municipal Court to represent a client. However, his route did not take him in the direction of that court.

{¶ 12} During the traffic stop, the officer learned that VanBibber's license was under suspension and that his license plate had expired in October 2019. VanBibber told the officer that he had just purchased the vehicle when, in fact, he had owned the vehicle for nearly a year and had failed to transfer the title and registration. Notably, the vehicle-registration-and-transfer block imposed by the Delaware Municipal Court remained in effect at that time. VanBibber was charged in the Bellefontaine Municipal Court with misdemeanor counts of driving under financial-responsibility suspension, having an expired or unlawful license plate, reckless operation, failure to yield at a stop sign, and speeding. He pleaded guilty to reckless operation and a reduced charge of speeding, and the other charges were dismissed. He was ordered to pay a fine and court costs, and his driver's license was suspended for 90 days.

{¶ 13} Nevertheless, he continued to drive.

### 4. *Traffic Violations in Champaign County*

{¶ 14} In February 2020, just 13 days after VanBibber's license was suspended by the Bellefontaine Municipal Court, a Champaign County sheriff's deputy stopped him for a headlight violation. VanBibber could not provide the deputy with his vehicle registration or proof of insurance. The deputy noted that VanBibber was driving with an expired license plate belonging to the vehicle's

former owner.  Once again, VanBibber falsely claimed that he had purchased the vehicle a few months earlier and that he had not had time to transfer the title.

{¶ 15} VanBibber was charged in the Champaign County Municipal Court with driving under court suspension, in violation of R.C. 4510.11, and with driving under noncompliance suspension and under financial-responsibility suspension, both in violation of R.C. 4510.16(A).  He pleaded guilty to driving under court suspension, and the other charges were dismissed.  The court imposed a 30-day jail sentence, which it suspended in its entirety on the condition that VanBibber commit no driving offenses in the next year.  And the court ordered VanBibber to pay $507 in fines and court costs with an initial payment of $20 due by March 30, 2020.  The court's order further stated that if VanBibber failed to make a payment by the deadline, he would have to appear in court on March 31, 2020.  Because he failed to make the required payment or appear in court on the stated date, a contempt warrant was issued in October 2020.  VanBibber did not pay the fine or court costs until February 2021.

*5. Relator Initiates a Disciplinary Investigation*

{¶ 16} Upon learning of VanBibber's multiple traffic offenses and driver's-license suspensions in early 2020, VanBibber's employer terminated VanBibber's employment and reported his conduct to relator.  In response to relator's first letter of inquiry into the extent of his charges and convictions for traffic violations and whether he "knowingly continued to drive without a license" after his convictions, VanBibber claimed that he had driven "only when necessary to maintain [his] livelihood" and that he was taking steps to ensure that he would not do so again.

{¶ 17} In August 2020, VanBibber signed an affidavit in which he acknowledged his prior traffic charges, convictions, and driver's-license suspensions.  He admitted that he had flagrantly violated the law, claimed that he had accepted responsibility for his actions, and represented that he had taken steps to ensure that his misconduct would not be repeated.  VanBibber expressly

acknowledged that relator would reopen its investigation if he committed similar offenses in the future. Relator then closed its investigation without filing a formal complaint. Despite VanBibber's assurances to relator, he has stipulated and the evidence shows that he continued to drive while his driver's license was under suspension.

### 6. Traffic Violations in Crawford County

{¶ 18} In November 2021, more than a year after relator closed the disciplinary investigation, a Crestline police officer stopped VanBibber for having a white light on the rear of his vehicle. During that traffic stop, the officer learned that VanBibber's driver's license was under suspension and that he was driving with an expired license plate. VanBibber was charged in the Crestline Mayor's Court with driving under suspension. VanBibber self-reported his conduct to relator before pleading no contest to an amended charge of no operator's license. He was found guilty and ordered to pay a fine and court costs.

{¶ 19} While his traffic case was pending, VanBibber petitioned the Crawford County Municipal Court for permission to retake the driving test and for limited driving privileges. The court granted the petition, and VanBibber obtained limited driving privileges, effective January 13, 2022.

### 7. Disorderly Conduct in Marion County

{¶ 20} In April 2022, VanBibber was charged in the Marion Municipal Court with disorderly conduct after he repeatedly knocked on his neighbor's door while intoxicated, believing that the house was his own. He paid the waiver on the disorderly-conduct citation and the case was closed.

### 8. Relator Reopens the Disciplinary Investigation

{¶ 21} In response to VanBibber's February 2022 self-report of his Crawford County case, relator sent him a letter requesting additional information. VanBibber replied, stating that in summer 2021, he moved in with family members in Galion and opened a law office in Mansfield. He admitted that after submitting

his August 2020 affidavit to relator, he drove "on several occasions" when he was unable to obtain rides from friends, family, or commercial ridesharing services.

{¶ 22} Relator later asked VanBibber to provide copies of his rideshare receipts and the names of anyone who had given him rides from late August 2020 through mid-January 2022. Relator asked that VanBibber submit this information no later than November 14, 2022, and stated that no extensions of time would be granted.

{¶ 23} Nearly three months *after* relator filed a complaint with the board, VanBibber informed relator through counsel that his ex-girlfriend had paid for the majority of his rideshares. However, the parties have stipulated that if called as a witness, VanBibber's ex-girlfriend would testify that (1) she dated VanBibber from approximately November 2020 to July 2021, (2) she paid for eight rideshares for VanBibber between March and June 2021, (3) VanBibber never informed her that he could not legally drive, and (4) VanBibber borrowed her car several times during the relationship and "scratched [it] up" on one occasion.

### 9. *Findings of Misconduct with Respect to Count One*

{¶ 24} The board found by clear and convincing evidence that VanBibber violated Prof.Cond.R. 3.4(c) by failing to comply with the Bellefontaine Municipal Court's 90-day license suspension and multiple court orders regarding the payment of fines, costs, and related court appearances; Prof.Cond.R. 8.4(c) by providing false information to law-enforcement officers in Logan and Champaign Counties regarding the purchase of his vehicle; and Prof.Cond.R. 8.4(h) by failing to comply with multiple traffic laws and driver's-license suspensions.

{¶ 25} We adopt the board's findings of misconduct. We also note that the facts regarding VanBibber's conduct during relator's investigations could support findings that VanBibber violated Prof.Cond.R. 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter) *and* 8.1(b) (prohibiting a lawyer from knowingly failing to

respond to a demand for information by a disciplinary authority during an investigation). The board, however, has made no findings of such misconduct with respect to Count One—nor could it, because VanBibber has not been charged under Count One with violating those rules and has not stipulated to violating them.[1] *See In re Ruffalo*, 390 U.S. 544, 552, 88 S.Ct. 1222, 20 L.Ed. 2d 117 (1968) (the "absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges" deprives an attorney of procedural due process); *Disciplinary Counsel v. Simecek*, 83 Ohio St.3d 320, 322, 699 N.E.2d 993 (1998) (the addition of misconduct charges after the record is closed and without fair notice to the attorney "fails to pass the test of procedural due process"); *see also Disciplinary Counsel v. Reinheimer*, 162 Ohio St.3d 219, 2020-Ohio-3941, 65 N.E.3d 235, ¶ 7-9, 18-19 (applying this court's holdings in *Ruffalo* and *Simecek* to reject the board's findings that an attorney violated two divisions of Prof.Cond.R. 1.4 based on facts that were not alleged and violations that were not charged in the relator's complaint).

{¶ 26} Nonetheless, the board's factual findings regarding VanBibber's conduct during relator's investigations are important to our analysis because they support the parties' stipulations and the board's findings regarding two aggravating factors that are relevant to the sanction for VanBibber's misconduct—namely, (1) that VanBibber failed to cooperate in the disciplinary process and (2) that he submitted false evidence or false statements or engaged in other deceptive practices during the disciplinary process. *See* Gov.Bar R. V(13)(B)(5) and (6).

---

1. Although VanBibber was charged under Count Two with a violation of Prof.Cond.R. 8.1(b), the allegations in that count are limited to VanBibber's failure to provide information in response to relator's multiple inquiries regarding his client trust account.

### B. Count Two—Trust-Account Violations and Failure to Cooperate
### in the Resulting Disciplinary Investigation

{¶ 27} In May 2022, a client paid VanBibber a flat fee of $3,500 under a written fee agreement that provided that the fee was earned upon receipt and that the client may be entitled to a refund of all or part of the fee if VanBibber did not complete the representation. The next day, VanBibber issued himself a $3,500 check from his client trust account, but he did so before the client's credit-card payment was credited to that account. His bank returned the check for insufficient funds, and it notified relator of that fact.

{¶ 28} On May 31, 2022, relator sent a letter of inquiry by certified mail to VanBibber at his office address, asking him to provide a written response and documentation regarding the overdraft of his client trust account by June 14. Someone at that address signed for the letter, but VanBibber did not respond to it. In early July, relator emailed VanBibber a copy of the letter and inquired about the status of his response. After receiving that email, VanBibber found relator's initial letter in a common area outside his office. He informed relator that he had not received the letter and that no one from his office had signed for it. He then requested and received a two-week extension of time to provide his written response. Two days after his response was due, VanBibber requested another extension of time to respond to relator's inquiry, claiming that he had improperly calendared the deadline and that he had recently contacted counsel about the matter; relator granted the request, giving VanBibber until August 11 to respond.

{¶ 29} Thereafter, VanBibber met with an attorney to discuss his client-trust-account overdraft, but he did not retain that attorney. When he requested another extension of time to respond to relator's letter of inquiry, he told relator that he was waiting for his bank to respond to his request for records and he falsely represented that he had retained an attorney. (He did subsequently retain an attorney.) Relator granted an extension of time through August 25, but VanBibber

did not comply with the new deadline or respond to relator's subsequent efforts to communicate with him.

**{¶ 30}** Relator subpoenaed VanBibber's client-trust-account records from his bank. Those records demonstrated that VanBibber had commingled personal and client funds in his client trust account by failing to timely withdraw his earned fees. The records also showed that VanBibber had used his earned fees to pay his personal and business expenses directly from his client trust account.

**{¶ 31}** After reviewing the bank records, relator subpoenaed VanBibber for a deposition. Although the deposition was cancelled because the court reporter was ill, relator and VanBibber spoke by telephone on October 26. VanBibber apologized for his failure to respond to relator's inquiries, stating that he had only recently gathered documents responsive to relator's requests. He agreed that he would scan and email those documents to relator as soon as he returned to his office. Relator memorialized that conversation in an email and attempted to follow up with VanBibber a few days later when the documents had not been received.

**{¶ 32}** VanBibber responded to relator's inquiries through an attorney almost three months after relator filed a certified complaint in December 2022. He admitted that (1) while he typically charged flat fees that were earned upon receipt, he had occasionally maintained client funds in his client trust account, (2) he had commingled earned fees with client funds in his client trust account, (3) he had not maintained client or general ledgers for his client trust account, and (4) he had not performed required monthly reconciliations of his client trust account.

**{¶ 33}** The parties stipulated and the board found that VanBibber's conduct violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property) by commingling earned fees and client funds in his client trust account and 8.1(b) by failing to provide information in response to relator's multiple inquiries about his client trust account. In fact, in his posthearing brief to the panel, VanBibber

conceded that the funds held in his client trust account were primarily fees earned upon receipt. We adopt these findings of misconduct.

{¶ 34} In addition to violations of Prof.Cond.R. 1.15(a) and 8.1(b) as charged under Count Two of the complaint, VanBibber stipulated to the following violations that were not charged in the complaint: Prof.Cond.R. 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held), 1.15(a)(3) (requiring a lawyer to maintain a record for the lawyer's client trust account, setting forth the name of the account; the date, amount, and client affected by each credit and debit; and the balance in the account), and 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account). VanBibber also stipulated that he knowingly and voluntarily waived notice of the additional charges as required by Gov.Bar R. V(10)(A).

{¶ 35} The board accepted those stipulations, finding that VanBibber had knowingly and voluntarily waived notice of the additional charges and that he had violated those rules by failing to maintain client and general ledgers for funds held in his client trust account and by failing to reconcile that account monthly. We find that those stipulations and the board's findings are consistent with due process under the holdings in *Ruffalo* and *Simecek*, and we adopt the board's findings that VanBibber violated Prof.Cond.R. 1.15(a)(2), (3), and (5).

## II. SANCTION

{¶ 36} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 37} The parties stipulated and the board found that five aggravating factors are present in this case: (1) VanBibber acted with a dishonest or selfish motive, (2) he engaged in a pattern of misconduct, (3) he committed multiple

12

offenses, (4) he failed to cooperate in the disciplinary process, and (5) he submitted false statements or evidence during the disciplinary process. *See* Gov.Bar R. V(13)(B)(2) through (6).

{¶ 38} The board acknowledged that VanBibber often equivocated in response to questions from panel members, offered excuses for his actions, and attempted to downplay the seriousness of some of his misconduct. But it also found that when confronted about one incident of such equivocation, VanBibber promptly admitted that he had lied to a police officer during a traffic stop in an attempt to minimize the consequences of his conduct. He also acknowledged that his actions lacked maturity before once again accepting full responsibility for his misconduct. Believing his testimony to be sincere, the board rejected relator's contention that VanBibber had failed to acknowledge the wrongful nature of his misconduct. *See* Gov.Bar R. V(13)(B)(7).

{¶ 39} As for mitigating factors, the parties stipulated and the board found that VanBibber submitted evidence of his good character and reputation and had other penalties and sanctions imposed for his misconduct—namely, the sanctions he received for his traffic offenses and the disorderly-conduct charge. *See* Gov.Bar R. V(13)(C)(5) and (6). The board, however, rejected the parties' stipulation that VanBibber's clean disciplinary record was a mitigating factor, given that his misconduct spanned virtually his entire legal career. *See, e.g.*, *Disciplinary Counsel v. Longino*, 128 Ohio St.3d 426, 2011-Ohio-1524, 945 N.E.2d 1040, ¶ 30 (declining to attribute mitigating effect to a clean disciplinary record given the attorney's brief tenure as an attorney).

{¶ 40} In addition to the aggravating and mitigating factors identified by the parties, the board noted that in the year preceding his disciplinary hearing, VanBibber had been mentored informally by attorney Ted Coulter. Coulter, a solo practitioner with more than 41 years of experience, works in the same building as VanBibber and sees him almost every day. Coulter testified that VanBibber often

asks him for advice regarding legal procedure and strategy. He stated that he has observed VanBibber mature since they first met in March 2022. Coulter noted that VanBibber has become more mindful that the things he does and says, both personally and professionally, are important, and he stated that "[VanBibber's] got responsibility. He shows up. He completes things and [takes] care of clients."

{¶ 41} Coulter spoke of VanBibber's passion for helping his clients, stating, "[VanBibber] tries to help people like I do * * *, on our own time * * *." And like two attorneys who submitted character letters on VanBibber's behalf, Coulter also spoke of the dire need in Marion County for attorneys who are willing to work in a rural area and accept court-appointed work.

{¶ 42} In a posthearing brief to the panel, relator recommended that VanBibber be suspended from the practice of law for two years with 18 months stayed on the conditions that he submit to an assessment conducted by the Ohio Lawyers Assistance Program ("OLAP") and comply with any resulting treatment recommendations. VanBibber asserted that his misconduct did not involve or harm any clients and that his failure to comply with multiple traffic laws and driver's-license suspensions does not render him unfit to practice law. He therefore suggested that a fully stayed two-year suspension would be the appropriate sanction for his misconduct.

{¶ 43} The board acknowledged that VanBibber's misconduct did not harm any clients. But it also recognized that an attorney's deliberate violation of the law nonetheless reduces public confidence in the legal profession. We have long declared that "[t]he integrity of the profession can be maintained only if the conduct of the individual attorney is above reproach" and that attorneys " 'should refrain from any illegal conduct * * * because obedience to the law exemplifies respect for the law.' " *Cincinnati Bar Assn. v. Hennekes*, 110 Ohio St.3d 108, 2006-Ohio-3669, 850 N.E.2d 1201, ¶ 13, quoting *Cleveland Bar Assn. v. Stein*, 29 Ohio St.2d 77, 81, 278 N.E.2d 670 (1972).

**{¶ 44}** In determining the appropriate sanction for VanBibber's misconduct, the board considered *Stark Cty. Bar Assn. v. Zimmer*, 135 Ohio St.3d 462, 2013-Ohio-1962, 989 N.E.2d 51. In *Zimmer*, we indefinitely suspended an attorney who, like VanBibber, committed multiple driving infractions over several years—some of which were related to his consumption of alcohol—and continued to drive while his license was under suspension. *Id*. at ¶ 5, 7, 9. Zimmer's traffic offenses culminated with an incident in which he crashed into a parked vehicle and a building and then fled the scene without reporting the damage or leaving his contact information. *Id*. at ¶ 5. Several bench warrants were issued for Zimmer's failure to comply with various court orders related to his traffic offenses, and he failed to cooperate in the resulting disciplinary investigation. *Id*. at ¶ 7, 9.

**{¶ 45}** Zimmer's misconduct was more egregious than VanBibber's in that Zimmer was found to have committed 17 rule violations, including multiple violations of Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), 8.4(c), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) and former disciplinary rules prohibiting comparable misconduct. *Zimmer* at ¶ 6, 8, 10, 12. VanBibber, in contrast, has been found to have committed single violations of Prof.Cond.R. 8.1(b), 8.4(c), and 8.4(h), along with four additional violations of rules related to the management of his client trust account—none of which involved the misappropriation of client funds. Both Zimmer and VanBibber failed to cooperate in the disciplinary investigations and had other sanctions imposed for their misconduct. *See Zimmer* at ¶ 14. While the evidence in this case suggests that VanBibber *may* have some issues with substance use, in *Zimmer* we found that the evidence *strongly suggested* that an untreated substance-use and/or mental disorder had interfered with his personal conduct for some time—though he did not present any documentation to establish that as a mitigating factor, *id*. at ¶ 16, 17.

**{¶ 46}** The board also considered several cases more recent than *Zimmer* in which we imposed lesser sanctions on attorneys who had engaged in similar misconduct, including *Disciplinary Counsel v. Piazza*, 159 Ohio St.3d 150, 2020-Ohio-603, 149 N.E.3d 469, and *Disciplinary Counsel v. Halligan*, 157 Ohio St.3d 447, 2019-Ohio-3748, 137 N.E.3d 1141.

**{¶ 47}** In *Piazza*, Piazza was arrested and charged with assault and disorderly conduct, after which he repeatedly violated a temporary protection order that prohibited him from having any contact with the victim of those offenses, made false statements to law-enforcement officers about his contact with the victim, and attempted to gain an advantage in his criminal proceeding by advising the victim not to appear for trial. *Piazza* at ¶ 3-5, 9. Piazza eventually entered no-contest pleas to two charges of violating the protection order, and the original assault and disorderly-conduct charges were dismissed. *Id*. at ¶ 4-5. He later violated the terms of his probation by testing positive for cocaine, which he admitted he had used on multiple occasions. *Id*. at ¶ 6-7.

**{¶ 48}** Like VanBibber, Piazza violated Prof.Cond.R. 3.4(c), 8.4(c), and 8.4(h). He likewise commingled personal and client funds and failed to maintain proper client-trust-account records in violation of Prof.Cond.R. 1.15(a) and 1.15(a)(2), (3), and (5). *Piazza* at ¶ 9, 14. But Piazza's misconduct was more egregious than VanBibber's in that Piazza twice misappropriated client funds and persuaded the relator to terminate *four* earlier investigations of his client-trust-account management by giving false assurances that he would change his ways. *Id*. at ¶ 11-13. The board also found that his contrition was insincere. *Id*. at ¶ 18. We suspended Piazza for two years with the second year conditionally stayed, and we placed conditions on his reinstatement to the practice of law that addressed his substance-use issues. *Id*. at ¶ 24.

**{¶ 49}** In *Halligan*, Halligan engaged in several alcohol-related traffic offenses, drove on at least one occasion while his driver's license was under

suspension, represented himself and a client in court while under the influence of alcohol, and attempted to mislead a judge and law-enforcement officers about his alcohol consumption. 157 Ohio St.3d 447, 2019-Ohio-3748, 137 N.E.3d 1141, at ¶ 5-12. He also neglected a client's legal matters, *id.* at ¶ 14-15, failed to provide competent representation to two clients, *id.* at ¶ 6, 12, 17-19, and failed to refund unearned fees, *id.* at ¶ 15-16, 18-19. The aggravating and mitigating factors in *Halligan* were similar to those in this case, but Halligan also failed to make restitution for the unearned fees he retained. *Id.* at ¶ 6, 21, 24. We suspended Halligan from the practice of law for two years with 18 months conditionally stayed; one of those conditions was that he make restitution to his clients. *Id.* at ¶ 30. We also imposed conditions on his reinstatement to the practice of law, including that he present proof of compliance with his criminal sanctions and proof that he was abstaining from and otherwise addressing his alcohol use. *Id.*

{¶ 50} In addition to *Zimmer*, *Piazza*, and *Halligan*, the board considered two cases in which we imposed conditionally stayed one-year suspensions on attorneys who had been convicted of various criminal offenses related to single incidents of OVI and fleeing the scene of an accident: *Cleveland Metro. Bar Assn. v. Strauss*, 165 Ohio St.3d 45, 2021-Ohio-1263, 175 N.E.3d 516, and *Disciplinary Counsel v. Mitchell*, 158 Ohio St.3d 356, 2019-Ohio-5218, 142 N.E.3d 669. But the board noted that Strauss and Mitchell were found to have violated only two ethical rules—Prof.Cond.R. 8.4(b) and 8.4(h). *See Strauss* at ¶ 8; *Mitchell* at ¶ 7. The board found that VanBibber's ethical violations—arising from five separate traffic incidents (four of which occurred while VanBibber's driver's license was under suspension), two instances of making false statements to law-enforcement officers, and mismanagement of his client trust account—are more numerous, varied, and pervasive than the offenses committed by Strauss and Mitchell but less egregious than those of Zimmer, Halligan, and Piazza.

**{¶ 51}** Weighing the misconduct and aggravating and mitigating factors in this case—including VanBibber's informal mentoring relationship and his commitment to serving clients in an underserved community—against these precedents, the board concluded that a conditionally stayed suspension would both protect the public and allow VanBibber to continue providing much-needed legal services in Marion County. The board therefore recommends that we suspend VanBibber from the practice of law for two years with the entire suspension stayed on the conditions that he (1) contact OLAP within 30 days of our final disciplinary order in this case to schedule a substance-abuse evaluation, (2) comply with any recommendations arising from the OLAP evaluation, (3) serve a two-year period of monitored probation focused on client-trust-account management and compliance with any OLAP recommendations, and (4) engage in no further misconduct.

**{¶ 52}** We have held that "[w]hen an attorney engages in a course of conduct that violates [an ethical rule prohibiting dishonesty, fraud, deceit, or misrepresentation], the attorney will be actually suspended from the practice of law for an appropriate period of time." *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237 (1995), syllabus. In *Fowerbaugh*, we imposed a six-month suspension on an attorney who lied to a client about the status of her case, created a false document to convince the client that he had filed her case after the court rejected his filing, and perpetuated his dishonesty by telling the client that a hearing had been scheduled and later that it had been canceled. *Id.* at 187-188, 191. We have since recognized that the presumption of an actual suspension established in *Fowerbaugh* may be overcome by "an abundance of mitigating evidence." *Disciplinary Counsel v. Markijohn*, 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 24, ¶ 8, citing *Dayton Bar Assn. v. Kinney*, 89 Ohio St.3d 77, 728 N.E.2d 1052 (2000).

{¶ 53} In this case, however, the conduct that resulted in our finding that VanBibber violated Prof.Cond.R. 8.4(c) consists of his twice making false statements to law-enforcement officers regarding the purchase date of his vehicle and the reasons for his failure to properly register that vehicle. Those misrepresentations were made in an effort to minimize what was arguably the most minor of his offenses during his Logan and Champaign County traffic stops. While VanBibber's false statements to law-enforcement officers during his traffic stops are unbecoming of an officer of the court, they were not made to a court or a client, nor were they made under oath.

{¶ 54} The larger problem in this case is that VanBibber disobeyed multiple court orders and continued to drive during the four-plus years relevant to this disciplinary proceeding. After his license was suspended in December 2017, he was charged with 13 additional offenses in four traffic cases and a separate count of disorderly conduct unrelated to his driving. Those offenses occurred over a nearly four-and-a-half-year period that commenced mere days before his admission to the practice of law in this state. VanBibber pleaded guilty to seven of those charges or amendments thereto—all misdemeanors.

{¶ 55} During his disciplinary-hearing testimony, VanBibber denied having a problem with alcohol or drugs. He admitted, however, that he had been drinking before his first traffic offense in December 2017, that marijuana was found in his car during the December 2018 traffic stop, and that he was intoxicated when he engaged in his most recent offense of disorderly conduct in April 2022. Although he claimed that he submitted to an OLAP assessment that did not result in any treatment recommendation, he presented no documentary evidence to support that contention. Moreover, that assessment occurred before VanBibber faced a disorderly-conduct charge that he admits arose from his intoxication.

{¶ 56} VanBibber's initial failure to cooperate in relator's investigation and, more particularly, his submission of false statements to relator in the initial

and reopened investigations admittedly give us pause. We note, however, that VanBibber has accepted responsibility for his misconduct by entering into comprehensive stipulations of fact and misconduct that include stipulations to three rule violations that were not charged in relator's complaint. Moreover, he has submitted evidence of his good character and exhibited a commitment to providing legal services in an underserved community.

{¶ 57} On these facts, we conclude that the two-year conditionally stayed suspension recommended by the board with its attendant conditions and corresponding period of monitored probation is the appropriate sanction for VanBibber's misconduct.

### III. CONCLUSION

{¶ 58} Accordingly, Jack Herchel VanBibber is suspended from the practice of law in Ohio for two years with the suspension stayed in its entirety on the conditions that he (1) contact OLAP within 30 days of the final disciplinary order in this case to schedule a substance-abuse evaluation, (2) comply with any recommendations arising from the OLAP evaluation, (3) serve a two-year term of monitored probation in accordance with Gov.Bar R. V(21), focusing on client-trust-account management and his compliance with any recommendations arising from the required OLAP evaluation, and (4) engage in no further misconduct. If VanBibber fails to comply with the conditions of the stay, the stay will be revoked and he will serve the full two-year suspension. Costs are taxed to VanBibber.

Judgment accordingly.

DEWINE, DONNELLY, STEWART, and DETERS, JJ., concur.

KENNEDY, C.J., concurs in part and dissents in part, with an opinion joined by FISCHER, J.

BRUNNER, J., not participating.

_____

**KENNEDY, C.J., concurring in part and dissenting in part.**

{¶ 59} This case presents the issue of what constitutes an appropriate sanction to protect the public when an attorney flagrantly and continually violates the law for five years and engages in misconduct that places his clients' funds directly at risk, even when there is no evidence of actual harm to the clients. In my view, "a fully stayed suspension here does not send a 'strong message' to attorneys across Ohio," *Disciplinary Counsel v. Nowicki*, __ Ohio St.3d __, 2023-Ohio-3079, __ N.E.3d __, ¶ 84 (Kennedy, C.J., concurring in part and dissenting in part), quoting *Nowicki* at ¶ 31. Therefore, I dissent from the majority's decision to stay respondent Jack Herchel VanBibber's suspension from the practice of law in its entirety. I would suspend VanBibber for two years with 18 months conditionally stayed.

{¶ 60} I concur in part with the majority's decision because I agree with the majority's findings regarding VanBibber's violations, aggravating factors, and mitigating factors. In addition, I agree with the majority that VanBibber must satisfy certain conditions to receive a stayed portion of his suspension. Specifically, I concur in the following part of the majority's decision:

> [VanBibber will] (1) contact [the Ohio Lawyers Assistant Program ("OLAP")] within 30 days of the final disciplinary order in this case to schedule a substance-abuse evaluation, (2) comply with any recommendations arising from the OLAP evaluation, (3) serve a two-year term of monitored probation in accordance with Gov.Bar R. V(21), focusing on client-trust-account management and his compliance with any recommendations arising from the required OLAP evaluation, and (4) engage in no further misconduct.

Majority opinion, ¶ 58  In addition, during the six-month actual suspension that I would impose, I would require VanBibber to complete six hours of a continuing-legal-education class on client-trust-account management.

## I.  Protecting the Public's Trust in Lawyers

{¶ 61} An attorney licensed to practice law in Ohio is instilled with public trust.  "An attorney does not hold an office of public trust in a constitutional or statutory sense."  *In re Thatcher*, 22 Ohio Dec. 116, 131 (1912).  "He is but an officer of the court, exercising a privilege or franchise."  *Id.*  Because "[t]he right to practice is not an absolute right, * * * [it] may be modified, or it may be withdrawn, in the interests of the public welfare."  *Id.*  Imposing attorney-discipline sanctions is one way to withdraw that privilege.

{¶ 62} "The primary purpose of attorney discipline 'is not to punish the offender, but to protect the public.' "  *Nowicki*, __ Ohio St.3d __, 2023-Ohio-3079, __ N.E.3d __, at ¶ 82 (Kennedy, C.J., concurring in part and dissenting in part), quoting *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53.  " 'Protecting the public * * * is not strictly limited to protecting clients from a specific attorney's potential misconduct.  Imposing attorney-discipline sanctions also protects the public by demonstrating to the bar and the public that this type of conduct will not be tolerated.' "  (Ellipses added in *Nowicki*.)  *Id.* at ¶ 83 (Kennedy, C.J., concurring in part and dissenting in part), quoting *Disciplinary Counsel v. Schuman*, 152 Ohio St.3d 47, 2017-Ohio-8800, 92 N.E.3d 850, ¶ 17.

{¶ 63} In 1788, Lord Mansfield wrote that the purpose of disciplinary actions "is not by way of punishment; but the Courts on such cases exercise their discretion, whether a man whom they have formerly admitted, is a proper person to be continued on the roll or not."  *Ex parte Brounsall*, 2 Cowp. 829, 830, 98 Eng.Rep. 1385 (1778).  This court has "previously emphasized that respect for the law and our legal system is the *sine qua non* of that right to continuance on the

rolls." *Disciplinary Counsel v. Trumbo*, 76 Ohio St.3d 369, 372-373, 667 N.E.2d 1186 (1996). In my view, VanBibber is not "a proper person to be continued on the roll" at this time.

{¶ 64} In December 2017, VanBibber was involved in a single-car accident. He was charged with operating a vehicle while under the influence of alcohol or a drug of abuse ("OVI"), a first-degree misdemeanor, as well as failure to control, a minor misdemeanor, and he pleaded guilty to an amended charge of reckless operation, a fourth-degree misdemeanor. VanBibber was sentenced to 30 days in jail, with 27 days suspended. VanBibber served the three unsuspended days of his sentence attending a driver-intervention program. VanBibber was also fined $250, ordered to pay court costs, and ordered to complete a term of community control. In addition, VanBibber's driver's license was suspended because he was unable to show at his sentencing hearing that he had motor-vehicle liability insurance at the time of his accident. Following the suspension of his driver's license, VanBibber obtained motor-vehicle liability insurance in September 2018, but he did not notify the Bureau of Motor Vehicles of his having obtained insurance.

{¶ 65} VanBibber then applied for driving privileges with the Xenia Municipal Court, but he did not pay the $50 permit fee, so his application was put on hold by the court. Although the court never ruled on his application for driving privileges, VanBibber continued to drive. Then, in November 2018, VanBibber bought a vehicle, but he failed to transfer the vehicle's title to himself.

{¶ 66} VanBibber's lack of respect for the law continued in December 2018 when he drove across six lanes of traffic, then swerved back across four lanes. During the traffic stop for the marked-lanes violation, a law-enforcement officer discovered marijuana in the trunk of VanBibber's vehicle. VanBibber was charged with possession of marijuana, a minor misdemeanor; a marked-lanes violation, a minor misdemeanor; driving under suspension, a first-degree misdemeanor; and driving under OVI suspension, a first-degree misdemeanor. VanBibber pleaded

guilty to a reduced charge of driving under a financial-responsibility ("FRA") suspension, and the remaining charges were dismissed. VanBibber was fined, ordered to pay court costs, and ordered to serve one year of community control. Additionally, VanBibber's driver's license remained suspended because he could not show proof of motor-vehicle liability insurance at the time of sentencing.

**{¶ 67}** VanBibber did not pay the fine or court costs by the court-ordered deadline, nor did he appear in court to show cause for his failure to pay. Consequently, the court placed a block on VanBibber's vehicle-registration privileges. Despite the suspension of his driving privileges and the vehicle-registration block, VanBibber continued to drive.

**{¶ 68}** In January 2020, VanBibber's flagrant disregard for the law continued. He was caught speeding and attempted to elude the law-enforcement officer making the traffic stop. During the traffic stop, the officer learned that VanBibber was driving under suspension and with an expired license plate. VanBibber lied to the officer, stating that he had recently purchased the vehicle when he actually bought it in November 2018. Following this incident, VanBibber was charged with driving under an FRA suspension, driving with an expired license plate, reckless operation, failure to yield at a stop sign, and speeding. VanBibber pleaded guilty to reckless operation and a reduced speeding charge; the other charges were dismissed. VanBibber was fined and his driver's license was suspended. Once again, VanBibber ignored the suspension and continued to drive without the privilege to do so.

**{¶ 69}** Thirteen days after VanBibber's driver's license was suspended for his January 2020 traffic offenses, VanBibber was pulled over for driving with only one operable headlight. VanBibber again lied to the law-enforcement officer making the traffic stop about when he had purchased the vehicle, claiming that he had not had time to transfer the title yet. VanBibber was charged with driving under court suspension, a first-degree misdemeanor; driving under a noncompliance

suspension, an unclassified misdemeanor; and driving under an FRA suspension, an unclassified misdemeanor. VanBibber pleaded guilty to driving under court suspension, a first-degree misdemeanor; the remaining charges were dismissed. He was sentenced to a 30-day suspended jail sentence and ordered to pay a fine and court costs totaling $507. VanBibber did not pay the fine or court costs by the court-ordered deadline, nor did he appear in court to show cause for his failure to pay. Consequently, a warrant was issued for his arrest.

{¶ 70} Around that time, VanBibber's employer learned about VanBibber's multiple convictions and driver's license suspensions and notified relator, disciplinary counsel, of those actions. Relator launched a disciplinary investigation but did not pursue disciplinary charges against VanBibber, who assured relator that he would not drive again until he was legally allowed to do so. Relator closed the investigation without filing a formal complaint.

{¶ 71} Despite this assurance to relator, VanBibber continued to drive. In November 2021, VanBibber was pulled over by a law-enforcement officer for a traffic stop. During the traffic stop, the officer learned that VanBibber was driving with a suspended license and an expired license plate. VanBibber was charged with driving under a noncompliance suspension, a first-degree misdemeanor. He pleaded no contest to an amended charge of no operator's license, a first-degree misdemeanor. VanBibber self-reported his conduct to relator.

{¶ 72} After self-reporting his November 2021 traffic charges to relator, VanBibber engaged in further misconduct. He was charged with disorderly conduct in April 2022, and he overdrafted his client trust account in May 2022. Relator reopened the disciplinary investigation, during which relator discovered that VanBibber had also been commingling his clients' funds with his personal funds.

{¶ 73} In the interest of public welfare, VanBibber should be actually suspended from the practice of law for six months because he flagrantly violated

the law for five years. VanBibber's misconduct has spanned the course of his entire career as an attorney, demonstrating his lack of respect for the law and our legal system. Additionally, despite repeatedly receiving reduced or amended charges for his driving violations, VanBibber continued to exhibit apathy for the law. In my view, this type of behavior cannot be tolerated and makes VanBibber unfit for continuance on the rolls.

## II. No Abundance of Mitigating Evidence

{¶ 74} Generally, "attorney misconduct 'involving dishonesty, fraud, deceit, or misrepresentation warrants an actual suspension from the practice of law.' " *Disciplinary Counsel v. Jarvis*, 169 Ohio St.3d 430, 2022-Ohio-3936, 205 N.E.3d 499, ¶ 34, quoting *Disciplinary Counsel v. Karris*, 129 Ohio St.3d 499, 2011-Ohio-4243, 954 N.E.2d 118, ¶ 16; *see also Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237 (1995), syllabus. This presumption in favor of an actual suspension may be overcome only when there is "an abundance of mitigating evidence." *Disciplinary Counsel v. Markijohn*, 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 24, ¶ 8, citing *Dayton Bar Assn. v. Kinney*, 89 Ohio St.3d 77, 728 N.E.2d 1052 (2000).

{¶ 75} In Vanbibber's case, there are only two mitigating factors as compared to five aggravating factors. Two is not an abundance. " 'Abundance' means a 'great quantity or amount,' 'large number,' or 'plentiful supply.' " *Disciplinary Counsel v. Taylor*, __ Ohio St.3d __, 2024-Ohio-1082, __ N.E.3d __, ¶ 37 (Kennedy, C.J., concurring in part and dissenting in part), quoting *Webster's Third New International Dictionary* 8 (2002). The mitigating factors here— (1) evidence of VanBibber's good character and reputation and (2) other penalties and sanctions imposed for his misconduct, *see* Gov.Bar R. V(13)(C)(5) and (6)— are not great in quantity when compared to the aggravating factors—VanBibber (1) acted with a dishonest or selfish motive, (2) engaged in a pattern of misconduct, (3) committed multiple offenses, (4) failed to cooperate in the disciplinary process,

26

and (5) submitted false statements or evidence during the disciplinary process, *see* Gov.Bar R. V(13)(B)(2) through (6). Because there is not an abundance of mitigating factors, the presumption in favor of an actual suspension is not overcome in this case.

### III. Substantial Sanction for Commingling Client Funds

{¶ 76} "We have consistently recognized that the 'mishandling of clients' funds either by way of conversion, commingling, or just poor management, encompasses an area of the gravest concern of this court in reviewing claimed attorney misconduct.' " *Disciplinary Counsel v. Riek*, 125 Ohio St.3d 46, 2010-Ohio-1556, 925 N.E.2d 980, ¶ 10, quoting *Columbus Bar Assn. v. Thompson*, 69 Ohio St.2d 667, 669, 433 N.E.2d 602 (1982). Of the various types of mishandling of client funds, " '[n]o aspect of attorney misconduct is more frequently engaged in, or more severely condemned, than the commingling of an attorney's funds with those of his client.' " *Thompson* at 669, quoting Ohio State Bar Foundation, *Ethics and Discipline in Ohio*, 15 (1977). "[T]he separation of client funds from those of the lawyer [is necessary], not only to protect the client, but also to avoid even the appearance of impropriety." *Erie-Huron Counties Joint Certified Grievance Commt. v. Miles*, 76 Ohio St.3d 574, 576, 669 N.E.2d 831 (1996), citing former DR Canon 9 of the Code of Professional Responsibility.[2]

{¶ 77} Because "it is 'of the utmost importance that attorneys maintain their personal and office accounts separate from their clients' accounts[,]' * * * any violation of that rule 'warrants a substantial sanction whether or not the client has been harmed,' " *Disciplinary Counsel v. Wise*, 108 Ohio St.3d 381, 2006-Ohio-1194, 843 N.E.2d 1198, ¶ 15, quoting *Erie-Huron Counties* at 577. For example,

---

1. Effective February 1, 2007, the Rules of Professional Conduct superseded the Disciplinary Rules of the Code of Professional Responsibility. *See* 110 Ohio St.3d CCLXXXIV.

> [i]n *Disciplinary Counsel v. Morgan*, 114 Ohio St.3d 179, 2007-Ohio-3604, 870 N.E.2d 1171, we imposed a two-year suspension with one year conditionally stayed on an attorney who had commingled funds in his client trust account, had overdrawn the account numerous times, and had failed to cooperate in the disciplinary investigation. In doing so, we noted that a "more stringent sanction than a stayed suspension" was warranted for this type of misconduct. *Id.* at ¶ 11.

*Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 20.

{¶ 78} Here, VanBibber failed to timely withdraw his earned fees from his client trust account, thereby commingling his personal funds with his clients' funds. Additionally, VanBibber paid his personal and business expenses directly from his client trust account. Similar to the attorney's misconduct in *Morgan*, VanBibber's misconduct regarding the removal of funds from his client trust account placed his clients' funds "directly at risk," *Morgan* at ¶ 11. Although relator did not discover any evidence that VanBibber's commingling, removal, and overdraft of funds from his client trust account actually harmed any of his clients, VanBibber's misconduct warrants a more substantial sanction than a fully stayed suspension. *See Wise* at ¶ 15.

## IV. Conclusion

{¶ 79} "All our [Rules of Professional Conduct] and all our Ethical Considerations are founded on respect for the law, for the court system, for the judges, for counsel and, of course, for clients." *Trumbo*, 76 Ohio St.3d 369 at 373, 667 N.E.2d 1186. VanBibber's misconduct, which spans his entire legal career, demonstrates a habitual lack of respect for the law, the courts, the bar, and his clients. VanBibber's flagrant disregard of the law, coupled with a lack of mitigating

factors and his commingling of his clients' funds with his personal funds, warrants a substantial sanction. Therefore, I would impose a sanction of a two-year suspension with 18 months conditionally stayed. Because the majority does otherwise, I dissent in part.

FISCHER, J., concurs in the foregoing opinion.

————————————

Joseph M. Caligiuri, Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

Montgomery Jonson, L.L.P., George D. Jonson, and Lisa M. Zaring, for respondent.

————————————